■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v GARY ALSTON, Respondent. — Order, Supreme Court, New York County (McCooe, J.), entered July 1, 1980, suppressing heroin, glassine envelopes and other paraphernalia, as well as statements defendant made to the arresting officer, unanimously reversed, on the law and the facts, the motion to suppress denied and the action is remanded for further proceedings not inconsistent herewith. Defendant was indicted for criminal possession of a controlled substance in the third and seventh degrees. At the suppression hearing the police officer who was the sole witness testified that he was in uniform on patrol in a marked police car at 10:30 P.M. on December 5, 1979. He had served previously in plainclothes and narcotics details. As his car traveled along 115th Street between Lenox and St. Nicholas Avenues, he observed defendant and another in conversation. From the patrol car, which had slowed to five miles per hour, and at a distance of 10 to 12 feet from defendant, the officer saw defendant reach into a brown paper bag and withdraw a glassine envelope which he handed to his companion. The officer testified that the envelope was a "quarter" package of heroin that sold for $50 to $65. The officer testified that when defendant and his companion turned and faced the patrol car, they registered a "look of surprise or shock in their face." The officer observed defendant "take the brown paper bag and jam it into his right jacket pocket *** [and then] turn around and head east *** [while] the other individual headed west". The officer left his car and ordered defendant to stop. Defendant quickened his pace. The officer lunged for defendant and caught his coat. There was a struggle. Defendant was subdued by the officer and his partner. The officer then took the paper bag from defendant's pocket. It contained packages of heroin, tins of cocaine, and a quantity of marihuana cigarettes. The officer also seized $244 in cash. The officer testified that as he began to recite the *Miranda* warnings, defendant interrupted, stating: "You planted the stuff on me, you put that stuff on me." The officer further testified that about one month later, he happened to meet defendant in the hallway of the courthouse at 100 Centre Street. Defendant, or his youth counselor, asked about the money the officer had taken. After the officer replied that the District Attorney had custody of the cash, defendant interjected "I told you I found that stuff." The suppression Justice, in a well-considered written opinion, found that the officer's testimony was credible but concluded: "The mere passing of glassine envelopes, the contents of which the police suspect might be narcotics, is insufficient to constitute probable cause to arrest *** 'absent other *solid evidentiary factors*'", citing and quoting this court's opinion in *People v Hester* (71 AD2d 121, 122), in which the facts were similar. However, after the suppression order in this case, *Hester* was reversed, *sub nom. People v McRay* (51 NY2d 594). The court there stated (p 598) as follows with reference to assaying the weight to be accorded the passing of glassine envelopes in determining whether probable cause was established for a narcotics arrest: "In the present day culture, such evidence presents such a

strong clue of criminality that little more by way of relevant facts or circumstances is required in supplementation to justify the arrest. In each of these three matters, proof by a qualified observer that the exchange of the envelopes occurred in an area known for its high incidence of narcotic activity provided the requisite additive so that a finding of probable cause was permissible." Here several factors supplemented the observed passing of the envelope. The officer was a trained observer. He testified to several years' training and experience in narcotics investigation, with over 500 narcotics arrests. The "police officer's experience and training in narcotics investigations are entitled to weight in evaluating his or her observations" *(People v McRay, supra,* at p 601). A "high incidence of narcotic trafficking in a particular community is a relevant circumstance in assessing probable cause" *(People v McRay, supra,* at p 601). The officer testified that this was such a community. We note that this is the very same area involved in *People v Hester (supra).* Defendant's conduct or behavior, suggesting a consciousness of guilt, is to be considered as some "proof of a crime" *(People v McRay, supra,* at p 604). In reversing *Hester,* the Court of Appeals noted that consideration was required to be given to the fact that "defendant was looking up and down the street during the transaction." *(People v McRay, supra,* p 606.) Here, the suppression Judge did not give sufficient consideration to the change of expression on the defendant's face when defendant noted that the officer was observing him, nor to the fact that defendant then jammed the brown bag into his pocket and proceeded away at a quick pace. Under the guidelines laid down in *McRay (supra),* the totality of defendant's conduct observed by a trained and experienced police officer in a neighborhood known for illicit narcotics activity warrants a finding of probable cause for the arrest and search. The observed delivery of the glassine envelope was the " 'hallmark' " of a drug transaction *(People v McRay, supra,* at p 605). Since the arrest was lawful, no basis is shown for suppressing defendant's statements. Accordingly, as required, we direct reversal of the suppression and denial of the motion. Concur — Kupferman, J. P., Birns, Ross, Silverman and Fein, JJ.